

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ZENOBIA WISE-SENIOR,

        Plaintiff,

v.                                        ACTION NO. 2:16cv595

ANTHEM INC., *et al.*,

        Defendants.

## DISMISSAL ORDER

This matter is before the Court on Defendants' Motion to Dismiss. Mot. to Dismiss, ECF No. 4. The Court concludes that oral argument is unnecessary because the facts and legal arguments are adequately presented in the parties' briefs. For the reasons set forth below, the Defendants' Motion to Dismiss, ECF No. 4, is **GRANTED**.

### I. Factual Background

Plaintiff Zenobia Wise-Senior ("Plaintiff"), proceeding *pro se*, filed suit against Defendants Anthem, Inc., The Anthem Companies, and Amerigroup an Anthem Company (collectively "Anthem" or "Defendants"), alleging that she was retaliated against after she raised concerns to management about certain improper business practices. Compl. at 5, ECF No. 1. Specifically, Plaintiff claims that she (i) raised "an objection to Anthem's failure to obtain disclosure forms from each physician and its improper reuse of personal information between providers in the same practice group;" and (ii) raised "concerns regarding the accuracy of information obtained from third-party verification organization, Medversant and utilization of those reports by the Defendant in the accreditation process for Medicare/Medicaid services." *Id.* Plaintiff expressed her concerns "within [her] department on April 30, 2015, to human resources

on May 7, 2015, and to the Defendant's compliance department on May 14, 2015." *Id.* After Plaintiff raised her concerns, Plaintiff claims that Defendants "engaged in acts of retaliation" against her. *Id.* Specifically, Plaintiff alleges that Defendants (i) discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by segregating her from the employee population and subjecting her toسeksual harassment and a hostile work environment; (ii) denied her pay for work performed during her lunch hour and after hours; (iii) charged her for "an occurrence of Unscheduled Time Off" for an absence Plaintiff took "for FMLA purposes;" and (iv) reassigned her job responsibilities which "result[ed] in an inequitable distribution of work." *Id.* Plaintiff claims that Defendants' alleged retaliatory actions violated the National Defense Authorization Act ("NDAA"), the Defense Contractor Whistleblower Protection Act ("DCWPA"), and the False Claims Act ("FCA"). *Id.* at 3, 5.

## II. Analysis

### A. Standard of Review

Defendants seek to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is warranted under Rule 12(b)(1) for any claims over which the Court lacks subject matter jurisdiction. Plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009). A Rule 12(b)(1) motion to dismiss should be granted "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In determining whether subject matter jurisdiction exists, the district court "may consider evidence outside the pleadings without converting the

proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 566-67 (E.D. Va. 2009).

Defendants also seek to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to "allege facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Johnson*, 682 F. Supp. 2d at 567 (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* "Although the truth of the facts alleged is assumed, courts are not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (citations omitted). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. Discussion

In their Motion to Dismiss, Defendants liberally construed Plaintiff's Complaint to include the following claims: (i) a retaliation claim under the NDAA; (ii) a retaliation claim under the DCWPA; (iii) a retaliation claim under the FCA; (iv) a discrimination and harassment claim under Title VII; and (v) an interference claim under the FMLA. Mot. to Dismiss at 1, ECF No. 4. In her opposition brief, Plaintiff clarified that she did not intend to raise separate claims under Title

VII or the FMLA. Instead, Plaintiff intended her allegations of violations of these statutes to serve "as examples of retaliatory actions" of Defendants. Opp. Br. at 4, ECF No. 7. For example, Plaintiff explained that her Title VII-related allegations "are based within the NDAA and FCA anti-retaliation provisions" and that "there was not a need to seek additional assistance from the EEOC" as they were "not something that could be remedied by the EEOC." *Id.* at 12, 14. Plaintiff further explained that she "is not presenting a claim for FMLA." *Id.* at 14. Accordingly, the Court construes Plaintiff's Complaint to include only an NDAA retaliation claim, a DCWPA retaliation claim, and an FCA claim, and will analyze each claim below.

    1. <u>NDAA Retaliation Claim</u>

Plaintiff's NDAA retaliation claim is brought pursuant to 41 U.S.C. § 4712. Compl. at 3. Defendants argue that Plaintiff's NDAA retaliation claim should be dismissed because Plaintiff failed to exhaust her administrative remedies on this claim. Mem. in Supp. of Mot. to Dismiss at 9, ECF No. 5. This Court agrees.

Pursuant to 41 U.S.C. § 4712, an employee of a federal contractor may bring a retaliation claim against the federal contractor under certain circumstances. 41 U.S.C. § 4712. The statute provides:

> (a) Prohibition of reprisals.
>
> (1) In general. An employee of a contractor, subcontractor, or grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, or gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

4

41 U.S.C. § 4712(a). Section 4712(b) sets forth the procedural steps for investigating a complaint of retaliation.

> (b) Investigation of complaints.
>
> (1) Submission of complaint. A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, contractor or grantee concerned, and the head of the agency.

41 U.S.C. § 4712(b)(1). The statute also includes a subsection titled "Remedy and enforcement authority," that states, in pertinent part:

> (c) Remedy and enforcement authority.
>
> (1) In general. Not later than 30 days after receiving an Inspector General report pursuant to subsection (b), the head of the executive agency concerned shall determine whether there is sufficient basis to conclude that the contractor or grantee concerned has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief or shall take one or more of the following actions:
>
> (A) Order the contractor or grantee to take affirmative action to abate the reprisal.
>
> (B) Order the contractor or grantee to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.
>
> (C) Order the contractor or grantee to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were

reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.

(2) Exhaustion of remedies. If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, **the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.** Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

41 U.S.C. § 4712(c) (emphasis added).

In their Motion to Dismiss, Defendants argue that the subsections of § 4712 set forth "exhaustion of remedies requirement[s] that must be satisfied before a lawsuit can be filed." Mem. in Supp. of Mot. to Dismiss at 9, ECF No. 5. Because Plaintiff did not allege that she exhausted her remedies by first submitting a complaint to the Inspector General and following the procedures of § 4712(b) and (c), Defendants ask this Court to dismiss Plaintiff's NDAA retaliation claim pursuant to Federal Rule 12(b)(1). *Id* at 10. Plaintiff admits that she did not file a complaint with the Inspector General. Opp. Br. at 3, ECF No. 7. However, Plaintiff argues that her failure to do so was "not a failure to exhaust administrative remedies" because § 4712(b)(1) states that an aggrieved individual "*may*" submit a complaint to the Inspector General, "not that they must submit a complaint." *Id.* (emphasis provided by Plaintiff). In

6

their reply brief, Defendants argue that Plaintiff's position has recently been heard and rejected in other courts. Reply Br. at 5-6, ECF No. 10. This Court agrees.

In *Moore v. Univ. of Kan.*, 118 F. Supp. 3d 1242 (D. Kan. 2015), the plaintiff claimed that he was retaliated against in violation of § 4712 "for being a whistleblower in disclosing mismanagement, waste, abuses and non-compliance with federal grants and contracts." *Id.* at 1248. The defendants "look[ed] at the plain terms of § 4712(c)(2) as requiring the exhaustion of administrative remedies before an aggrieved employee may bring a de novo action of law." *Id.* at 1252. The plaintiff argued that § 4712 did not impose an exhaustion requirement "because the statute reads that a [complainant] 'may submit a complaint to the Inspector General' and because the Inspector General may decline to investigate a complaint if it has been addressed in a prior state or federal proceeding." *Id.* at 1253. The *Moore* Court "agree[d] with the defendants that § 4712 is properly read to require the complainant to exhaust administrative remedies in the described ways prior to filing an action." *Id.* (comparing the remedy language of § 4712 to the whistleblower provisions of Sarbanes-Oxley and the DCWPA – both of which have been interpreted as having a jurisdictional exhaustion requirement); *see also Moore v. Univ. of Kan.*, No. 14-2420-SAC, 2015 U.S. Dist. LEXIS 168938, at *8-9 (D. Kan. Dec. 17, 2015) (noting in a subsequent order that "[t]he court remains confident that the NDAA exhaustion prerequisite is of a jurisdictional character").

Similarly, in *Wright v. Common Ground Health Clinic, Inc.*, No. 16-11623, 2016 U.S. Dist. LEXIS 121965 (E.D. La. Sept. 9, 2016), the parties disagreed on whether § 4712 required the exhaustion of administrative remedies prior to filing suit. The plaintiffs argued that "had Congress intended that [p]laintiffs be required to exhaust their administrative remedies prior to

filing suit, it would have used the 'shall' instead of 'may'" when discussing the filing of a complaint with the Inspector General. *Id.* at *10. The court concluded:

> The plain language of the statute clearly compels the view that administrative exhaustion is required. Indeed, the first clue is that Congress actually titled Section 4712(c)(2) "Exhaustion of remedies." Second, the statute explicitly states that "[i]f the head of an executive agency issues an order denying relief under paragraph (1) or [fails to act within the prescribed time periods], the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity . . . in the appropriate district court of the United States." U.S.C. § 4712(c)(2). There is no reasonable interpretation of this provision other than that advanced by defendants.

*Id.* at *10-11 (alterations in original). The court further reasoned:

> Contrary to plaintiffs' arguments, the use of the word "may" in Section 4712(b)(1) does not indicate that an aggrieved employee may forego the administrative process and proceed straight to court. Rather, the term "may" simply signifies that a person who has been subjected to a reprisal prohibited by the statute is not commanded to file a claim. In other words, Section 4712 does not impose a mandatory reporting requirement on those persons whose rights are violated. If the person does want to obtain relief under the statute, however, the statute makes clear that he or she must first complain to the Inspector General.

*Id.* at *11.

This Court agrees that § 4712 requires the exhaustion of administrative remedies before an aggrieved employee can file a lawsuit. Here, Plaintiff admits that she did not do so. Opp. Br. at 3, ECF No. 7. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's NDAA retaliation claim.[1]

---

[1] Because the Court determines that dismissal is warranted based on Plaintiff's failure to exhaust her administrative remedies, the Court need not address Defendants' alternative arguments for dismissal.

8

2. <u>DCWPA Retaliation Claim</u>

Defendants argue that Plaintiff's DCWPA retaliation claim should be dismissed because Plaintiff failed to allege the elements of a DCWPA claim. Specifically, Defendants argue that Plaintiff failed to allege that Defendants are covered contractors under the DCWPA. Mem. in Supp. of Mot. to Dismiss at 2, 7-8, ECF No. 5. This Court agrees.

The DCWPA provides:

> (1) An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following:
>
> (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant.
>
> (B) Gross mismanagement of a National Aeronautics and Space Administration contract or grant, a gross waste of Administration funds, an abuse of authority relating to an Administration contract or grant, or a violation of law, rule, or regulation related to an Administration contract (including the competition for or negotiation of a contract) or grant.
>
> (C) A substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a)(1).

Defendants argue that § 2409 "applies only to contractors who have been awarded a contract with the Department of Defense; the Department of the Army; the Department of the Navy; the Department of the Air Force; the Coast Guard; or the National Aeronautics and Space Administration." Mem. in Supp. of Mot. to Dismiss at 8, ECF No. 5 (citing 10 U.S.C. §§ 2303,

2409(g)(1)), and *DiMartino v. Remedi SeniorCare*, No. RDB-15-3788, 2016 U.S. Dist. LEXIS 85103, at *10-11 (D. Md. June 29, 2016)). Because Plaintiff failed to allege that Defendants are such contractors, Defendants argue that dismissal is warranted. *Id.*

In her opposition brief, Plaintiff seeks to avoid dismissal by arguing that Wellpoint Military Care Corporation, "an Anthem subsidiary," was involved in a "bid for the Tricare government contract," and that such bid is sufficient for this Court to characterize Defendants as covered contractors under § 2409. Opp. Br. at 4, 8, ECF No. 7. Plaintiff identifies the "Solicitation Number" and a bid protest "File Number" associated with the Tricare contract. *Id.* In their reply brief, Defendants provided the Court with the link to a website that shows the decision issued by the United States Government Accountability Office ("GAO") in connection with the bid protest referenced by Plaintiff.[2] Reply Br. at 8 n.2, ECF No. 10. Defendants argue, and the GAO decision establishes, that "none of the Defendants are parties to that contract, or even mentioned anywhere in the decision resolving the bid protest." *Id.* at 10-11; *see also* http://www.gao.gov/products/D15159. Therefore, the Court determines that Plaintiff has not established that Defendants are covered contractors under § 2409.

Further, it appears to the Court that § 2409 contains an exhaustion of administrative remedies provision that is similar to the provision found in 41 U.S.C. § 4712, as discussed above. For example, § 2409(b) explains that "[a] person who believes that the person has been subjected to reprisal . . . may submit a complaint to the Inspector General of the Department of Defense, or the Inspector General of the National Aeronautics and Space Administration" and, upon completion of the stated investigatory procedures, "the complainant shall be deemed to have

---

[2] Although Plaintiff did not attach the GAO's decision to her Complaint, the Court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor to seek compensatory damages and other relief . . . in the appropriate district court of the United States." 10 U.S.C. § 2409(b)(1), (c)(2). Other courts have recognized that administrative remedy exhaustion is a prerequisite to filing suit under § 2409. *See Brach v. Conflict Kinetics Corp.*, No. 1:16cv978, 2016 U.S. Dist. LEXIS 166076, at *18 (E.D. Va. Dec. 1, 2016) (noting that § 2409 states that "a plaintiff who has exhausted his administrative remedies may bring a reprisal claim against a 'contractor'"); *Wright v. Common Ground Health Clinic, Inc.*, No. 16-11623, 2016 U.S. Dist. LEXIS 121965, at *13 (E.D. La. Sept. 9, 2016) (recognizing that § 2409 has been "interpreted as having an exhaustion requirement of a jurisdictional character"); *LaBranche v. DOD*, No. 15-2280, 2016 U.S. Dist. LEXIS 18308, at *6 n.2 (E.D. La. Feb. 12, 2016) (noting that § 2409 "affords a whistleblowing employee who has exhausted administrative remedies with a cause of action against the retaliating federal contractor"); *Grost v. United States*, No. 13cv158, 2014 U.S. Dist. LEXIS 61608, at *41-42 (W.D. Tex. May 5, 2014) (dismissing plaintiff's § 2409 claim, in part, because plaintiff did not "submit[ ] a complaint to the Inspector General of the Department of Defense, and the other administrative prerequisites to filing suit therefore remain unfulfilled"). As noted above, Plaintiff concedes that she did not file a complaint with the Inspector General in connection with her allegations of retaliation. Opp. Br. at 3, ECF No. 7.

For these reasons, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's DCWPA retaliation claim.

### 3. FCA Retaliation Claim

Plaintiff's FCA retaliation claim is based on the same factual allegations as her other claims, namely that she: (i) raised "an objection to Anthem's failure to obtain disclosure forms

from each physician and its improper reuse of personal information between providers in the same practice group;" and (ii) raised "concerns regarding the accuracy of information obtained from third-party verification organization, Medversant and utilization of those reports by the Defendant in the accreditation process for Medicare/Medicaid services." Compl. at 5.

In their Motion to Dismiss, Defendants argue that Plaintiff's FCA retaliation claim should be dismissed because "[t]he FCA is intended to impose whistleblower liability where an employee reports that an individual or entity has presented a 'false or fraudulent claim' to the federal government," and "[t]here are no factual allegations in the Complaint to that effect." Mem. in Supp. of Mot. to Dismiss at 15, ECF No. 5 (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).

In her opposition brief, Plaintiff argues that she "is not required to show that [her] employer actually made/submitted false or fraudulent claims for payment" to be protected by the anti-retaliation provision of the FCA, but need only show that she is "merely *investigating matters that could reasonably lead* to a viable [FCA]" claim. Opp. Br. at 9, ECF No. 7 (emphasis in original). Plaintiff also provides additional factual allegations regarding Defendants' relationship with Medversant in her opposition brief. For example, Plaintiff alleges that Defendants utilize the services of Medversant, a third party vendor, to vet "providers who would like to join the Anthem network of providers or who are currently enrolled as providers with Anthem Inc. and, who desire to remain a part of the network and are undergoing the re-credentialing process." *Id.* at 10. Medversant is responsible for "automatically and continuously check[ing] for changes in license, OIG status, DEA certification, contact information, malpractice insurance coverage, malpractice insurance settlement databases and physician privileges." *Id.* at 9-10. Plaintiff claims that Medversant has submitted

credentialing files to Defendants that contain inaccuracies regarding providers' licensing information, certifications, insurance information, and sanctions. *Id.* at 10. Plaintiff alleges that "[t]hese providers, not properly vetted by Medversant, could be subject to parameters which could disqualify a provider from participation in Anthem's network of providers who provide Medicare/Medicaid services and ultimately likely result in the submission of false claims." *Id.* at 11. Further, Plaintiff claims that Defendants are contractually obligated to maintain credentialing procedures for their providers and seems to suggest that Defendants' reliance on Medversant for such purposes fails to comply with Defendants' credentialing obligations. *Id.* at 10-11.

In their reply brief, Defendants first argue that Plaintiff cannot slip new factual allegations into her opposition brief in hopes of amending her Complaint and avoiding dismissal. Reply Br. at 2, ECF No. 10. This Court agrees. *Davis v. Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) (noting that courts "may not consider additional allegations when ruling on a motion to dismiss"). However, the Court will consider the allegations set forth in Plaintiff's opposition brief to determine whether Plaintiff could cure the deficiencies of her FCA retaliation claim through an amendment to her Complaint.

The FCA includes an anti-retaliation provision that states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others **in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.**[3]

---

[3] Under the FCA, a suit "may be brought against anyone who 'knowingly presents' to the government 'a false or fraudulent claim for payment or approval.'" *United States ex rel. Owens v.*

13

31 U.S.C. § 3730(h)(1) (emphasis added); *see also Farmer v. Eagle Sys. & Servs.*, 654 F. App'x 157, 159 (4th Cir. 2016). In order to state a retaliation claim under the FCA, Plaintiff must show that: (i) she engaged in protected activity (*i.e.*, that she acted "in furtherance of an action" under the FCA or took "efforts to stop 1 or more violations" of the FCA); (ii) her employer knew about the protected activity; and (iii) her employer took adverse action against her as a result of the protected activity. *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 433 (4th Cir. 2015); *see also Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013).

Defendants argue, among other things, that Plaintiff has not sufficiently alleged that she engaged in protected activity. Mem. in Supp. of Mot. to Dismiss at 10, ECF No. 11. Defendants argue that Plaintiff's FCA retaliation claim "is founded purely on the notion that . . . Medversant . . . failed to live up to the contractual obligations it owed to *Anthem*" by "performing poor credentialing work and that the concerns allegedly raised by Plaintiff regarding Medversant "are far too speculative to be protected activity under the FCA." *Id.* at 12-13. The Court agrees. The allegations set forth in Plaintiff's Complaint fail to allege sufficient facts to state a claim for relief under the anti-retaliation provision of the FCA. Further, a review of the additional allegations contained in Plaintiff's opposition brief establishes that an amendment would be futile because the new facts fail to plausibly demonstrate that Plaintiff engaged in

---

*First Kuwaiti Gen. Trading & Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (citing 31 U.S.C. § 3729(a)(1)). Similarly, a suit may be brought against "anyone who 'knowingly makes . . . a false record or statement material to a false or fraudulent claim.'" *Id.* Congress has made it clear that the FCA is a "fraud prevention statute" and is not intended to "punish honest mistakes or incorrect claims submitted through mere negligence." *Id.* As the United States Court of Appeals for the Fourth Circuit has explained, "'[w]ithout fraud, there can be no FCA action' or violation." *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 174 (4th Cir. 2016) (citing *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 345-46 (4th Cir. 2010)).

14

protected activity. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's FCA retaliation claim.

### III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 4, is **GRANTED**.

Plaintiff may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within thirty days from the date of the entry of this Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk of the United States District Court, Norfolk Division, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

_____/s/_____
Arenda L. Wright Allen
United States District Judge

Norfolk, Virginia
___4-6___, 2017